**WO**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Keith Herring, et al., | ) | No. CV 06-2622-PHX-PGR |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Countrywide Home Loans, Inc., et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ———————————————————— | ) | |

Currently pending before the Court is the Plaintiff's Motion for Partial Summary Judgment Re: Breach of Contract (Doc. 11), and the Defendant's Cross Motion for Summary Judgment (Doc. 34).  The Court now rules on the motions.

**I.    FACTUAL BACKGROUND**

The Plaintiff obtained a mortgage loan from Countrywide Home Loans ("CHL") on December 20, 2001.   The Plaintiff secured her payment obligations under the loan by allowing a lien against her home, located at 4717 East Robin Drive, Prescott, Arizona. Throughout the loan period, Plaintiff failed to make all her mortgage loan payments on time. When delinquent, CHL  attempted to reach Plaintiff by telephone or by mail regarding her past-due payments.   By January 2005, approximately four months had passed since Plaintiff had made a payment on her mortgage loan. Thus, on January 12, 2005, the trustee, ReconTrust Company, N.A.("ReconTrust"), initiated a Trustee's Sale to sell the property securing the lien and apply the sale proceeds to Plaintiff's mortgage loan.  ReconTrust recorded a Notice of Trustee's Sale with the Yavapai County Recorder, setting a Trustee's Sale for 9:00 a.m. on April 18, 2005.

1   ReconTrust's records reflect that it  mailed a copy of the Notice of Trustee's Sale to

2   Plaintiff by certified or registered first-class mail on January 14, 2005.  ReconTrust also

3   published the Notice of Trustee's Sale in the Prescott Daily Courier on January 18 and 25,

4   2005 and February 1 and 8, 2005.  In addition,  ReconTrust hired a process server, Alena

5   Herrington, who posted the Notice of Trustee's Sale on the front door of the property located

6   at 4717 East Robin Drive in Prescott on January 18, 2005.

7   On April 14, 2005, Ms. Malessa Ramirez, a CHL employee,  left a message at

8   Plaintiff's home telephone number to follow up on the possibility of a Repayment Plan

9   Agreement before the scheduled April 18, 2005 Trustee's Sale.  After receiving no response

10  from Plaintiff, Ms. Ramirez called her again on Friday morning, April 15, 2005.   Later that

11  morning, CHL records show that a third party, Eric Kramer from Borrower Counseling

12  Service, contacted CHL to discuss Plaintiff's loan.  After receiving authorization to discuss

13  Plaintiff's loan with this individual, Ms. Ramirez talked to Mr. Kramer about Plaintiff's loan

14  status, the reasons Plaintiff defaulted on the loan agreement, her monthly income, and her

15  expenses and financial commitments.   Based on information CHL learned in the telephone

16  call with Mr. Kramer, CHL determined that Plaintiff was eligible for a Repayment Plan

17  Agreement.    Ms. Ramirez negotiated the terms of the Repayment Plan Agreement with

18  Plaintiff's agent, Mr. Kramer.  Soon after, the Plaintiff ratified the agreement by signing each

19  page and then faxed it to CHL.  CHL received the signed agreement by facsimile at

20  approximately 3:36 p.m on April 15, 2005.

21  At approximately 4:20 p.m. on April 15, 2005, after CHL had received the signed

22  agreement, the Plaintiff spoke with Ms. Ramirez and assured her that she was in the process

23  of securing the funds that needed to be electronically submitted.   Ms. Ramirez advised

24  Plaintiff that the Repayment Plan Agreement was not effective until CHL received not just

25  the signed agreement, but also the initial payment.  The Plaintiff submitted the initial

26  payment of $2,978.25 via Western Union on April 15, 2005 at 5:07 p.m.  Despite Plaintiff's

27  compliance with CHL's requirements, on April 18, 2005, at 9:00 a.m., the Trustee's Sale

28

1    proceeded and a third-party purchased the property at 4717 East Robin Drive in Prescott for

2    $189,500.   The present action for breach of contract and wrongful foreclosure followed.

3    **II.     LEGAL STANDARD AND ANALYSIS**

4           Summary judgment is proper only if the pleadings, depositions, answers to

5    interrogatories, and admissions on file, together with affidavits, if any, show that there is no

6    genuine issue as to any material fact and the moving party is entitled to judgment as a matter

7    of law.  Fed. R. Civ. P. 56©).  The moving party is entitled to judgment as a matter of law

8    when the nonmoving party fails to make a sufficient showing on an essential element of a

9    claim in the case on which the nonmoving party has the burden of proof.  Celotex Corp. v.

10   Catrett, 477 U.S. 317, 323 (1985).  There is no genuine issue of material fact for trial where

11   the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving

12   party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

13          The Plaintiff argues that no genuine issue of material fact remains for trial on whether

14   the Defendant breached the Repayment Plan Agreement executed by the parties.  In addition,

15   the Plaintiffs assert that their claim in tort for wrongful disclosure is also ripe for entry of

16   judgment in their favor as no factual issue remains as to whether the Defendant wrongfully

17   foreclosed on Plaintiff's residence.  The Defendant opposes the Plaintiff's Motion for Partial

18   Summary Judgment and maintains that the undisputed facts support judgment in its favor.

19          **A.     Breach of Contract**

20           In order to succeed on a claim for breach of contract, the Plaintiff must prove the

21   existence of a contract, its breach by CHL, and resulting damages.  Graham v. Asbury, 540

22   P.2d 656, 657 (Ariz. 1975).  According to the Defendant, the Plaintiff's understanding and

23   interpretation of the written contract she claims was breached is based solely upon her

24   discussions with Malessa Ramirez, a CHL employee. The Defendant argues that statute of

25   frauds bars a verbal agreement related to the sale of real property, such as the alleged verbal

26   contract between CHL and Plaintiff.   The Defendant concedes that the Repayment Plan

27   Agreement could have constituted an enforceable written contract, but because the Plaintiff

28   did not read or understand the terms of the Repayment Plan Agreement and did not intend

1    to be bound by those terms, no meeting of the minds occurred.  As a result, the Defendant

2    argues that the Repayment Plan Agreement is not an enforceable contract.

3                    **1.    Statute of Frauds**

4            As described above, the Defendant argues that the Plaintiff's entire understanding of

5    her alleged contract with CHL was based on her conversations with Malessa Ramirez on

6    April 15, 2005.  The Defendant maintains that Plaintiff's deposition testimony reveals that

7    the Plaintiff believed that, if she signed and returned the Repayment Plan Agreement to CHL

8    and electronically transmitted $2,978.25 to the company, the Trustee's Sale would not

9    proceed and she would retain her home. However, the Defendant argues that  the Plaintiff

10   cannot cite a single provision of the Repayment Plan Agreement upon which she based this

11   belief.  As such, it is the Defendant's position that the Plaintiff simply relied upon her verbal

12   communications with Ms. Ramirez and not the Repayment Plan Agreement itself.

13   Furthermore, the Defendant claims that before signing and returning the agreement, the

14   Plaintiff did not read it, understand it, or have any idea about its content or terms; therefore,

15   she simply acted solely in accordance with her conversation with a CHL employee on the

16   afternoon of April 15, 2005.   As such, it is the Defendant's position that the operative

17   contract that Plaintiff intended to enter into was oral.  Since a contract to forego a Trustee's

18   Sale and permit the borrower to retain her interest in the property must be in writing pursuant

19   to A.R.S. § 44-101(6), the Defendant contends that  the alleged contract between Plaintiff

20   and CHL is unenforceable pursuant to the statue of frauds.

21           The Court finds the Defendant's argument regarding the statute of frauds entirely

22   unpersuasive as it is clear that there was a written contract between the parties, the

23   Repayment Plan Agreement, which was properly executed on April 15, 2005. Furthermore,

24   as noted by the Plaintiff, Defendant's own contract states that "[a]ll parties to this agreement

25   represent . . . [they] are not relying upon any representation or acknowledgment, whether oral

26   or in writing, of any other party hereto except as contained herein." The Plaintiff is asserting

27   a claim for breach of the written contract between the parties and not any verbal agreements

28   that may or may not have been formed.  Therefore, the statute of frauds is inapplicable.  This

1   Court's focus is on the written contract, the Repayment Plan Agreement, and whether the

2   terms of that agreement were met by the signatories thereto.

3               **2.       Meeting of the Minds**

4               The next argument raised by the Defendant is that the Plaintiff and CHL never had

5   a meeting of the minds regarding the terms of the Repayment Plan Agreement, thus it is not

6   a valid, enforceable contract.  The Defendant maintains that the Plaintiff cannot establish the

7   requisite mutual consent because she never intended to be bound to the terms of the

8   Repayment Plan Agreement; therefore, the Repayment Plan Agreement is unenforceable as

9   a matter of law.

10              The Defendant claims the Plaintiff did not understand that the Repayment Plan

11  Agreement obligated her to pay an extra $721.33 – on top of her regular $992.75 monthly

12  mortgage payment – for the next six months.  The Defendant asserts, based on her alleged

13  lack of understanding, that the Plaintiff did not intend to commit to making these monthly

14  payments on the exact due date, with no grace period, via certified funds.   According to the

15  Defendant, the Plaintiff incorrectly believed that entering into Repayment Plan Agreement

16  would require CHL to <u>cancel</u> the scheduled Trustee's Sale, when in truth,  the terms of the

17  Repayment Plan Agreement stated that CHL would <u>postpone</u> the Trustee's Sale if Plaintiff

18  did not default on the agreement.    The Defendant points out that the Repayment Plan

19  Agreement would have obligated Plaintiff to pay a total of $7,306.20, and until such amounts

20  were paid, CHL   retained the right to reschedule the Trustee's Sale.    The Defendant

21  maintains that "[i]n light of the vast discrepancy between the actual terms of the Repayment

22  Plan Agreement and Plaintiff's understanding of the 'contract,' no meeting of the minds

23  occurred and no contract was formed."

24              The Court finds the Defendant's arguments regarding the formation of a written

25  contract both irrelevant and unpersuasive.   A contract is formed when there is manifestation

26  of mutual assent to the exchange and a consideration.  <u>Hill-Shaefer Partnership v. Chilson</u>

27  <u>Family Trust</u>, 799 P.2d 810, 815 (Ariz. 1990).  Mutual assent, however, is based on objective

28  evidence, not the hidden intent of the parties.  <u>Id.</u>  Based on the objective evidence before this

Court, a written contract was indeed formed.  The terms of the repayment plan were negotiated and formed on behalf of the Plaintiff by her authorized agent, Mr. Eric Kramer from Borrower Counseling Service.  Although the Defendant asserts that there was a vast discrepancy between the actual terms of the written agreement and Plaintiff's understanding of those terms, the record before the Court does not support such a contention.    The Repayment Plan Agreement indeed states that if the Plaintiff signed and returned it within five days, and the stated sum of $2,978.25 was paid, the Trustee's Sale would be postponed. It is undisputed that the contract was accepted then ratified by the Plaintiff's signature and submitted via fax to CHL.  The consideration for the agreement, $2,978.25, was submitted the same day via electronic funds.  Despite Plaintiff's clear compliance with her commitment to CHL, the Defendant failed to adhere to its obligation to postpone the Trustee's Sale.  It is undisputed that CHL proceeded with said sale on April 18, 2005, in clear breach of the written agreement formed between the parties.  The Court will not allow the Defendant to justify their clear breach of the agreement by arguing that Plaintiff did not understand its terms.

### 3.    Wrongfully Induced

The Defendant contends that if this Court does not determine that CHL is entitled to summary judgment in its favor, then alternatively, initial discovery suggests that a material issue of fact exists regarding the circumstances that induced CHL to offer the Plaintiff a repayment plan.  Specifically, the Defendant claims that CHL determined that Plaintiff was eligible for a Repayment Plan Agreement based, at least in part, upon a discussion between Malessa Ramirez at CHL and Eric Kramer from Borrower Counseling Service, an individual who indicated he had authorization to discuss Plaintiff's loan with CHL.  Mr. Kramer represented to CHL that the Plaintiff, after paying all her required monthly expenses, would have a positive income of at least $1,026.25.  CHL states that it relied upon the information provided to it by Mr. Kramer when determining that the Plaintiff had the reasonable potential to become and remain current on her mortgage.

1     The Defendant now argues that a factual dispute exists regarding both the source and
2 the accuracy of the information upon which CHL relied in deciding to offer the Plaintiff a
3 Repayment Plan Agreement.  The Defendant supports this contention by stating that the
4 Plaintiff testified that she did not recall authorizing Mr. Kramer to discuss her loan or the
5 pending sale of her home with CHL.  However, Plaintiff's deposition testimony that she does
6 not specifically recall a Mr. Eric  Kramer, after two years have passed since the sale of her
7 home, does not mean that he provided incorrect information.  Nor does it support the position
8 that a valid contract was never formed.  The Defendant received an authorization from Mr.
9 Kramer, the Plaintiff's agent, to speak about her financial information and negotiate a
10 contract.  Indeed, Ms. Ramirez would not deal with Mr. Kramer until she had written
11 confirmation of his ability to act on behalf of the Plaintiff and her interests.  CHL received
12 both the signed contract and the monetary payment it required in consideration of postponing
13 the Trustee's Sale in accordance with the terms of the Repayment Plan Agreement.

14     The undisputed facts before this Court establish that the Defendant breached the
15 Repayment Plan Agreement executed by CHL and Vanessa Herring on April 15, 2005.  The
16 written terms of the agreement required the Plaintiff to sign the document and submit
17 $2,978.25 electronically to CHL by April 18, 2005 in order for the Trustee's sale to be
18 postponed.  The Plaintiff submitted the funds via Western Union at 5:07 p.m. on April 15,
19 2005.[1]  The Defendant asserts that the Plaintiff knew, based on her verbal communications
20 with Ms. Ramirez, that the Repayment Plan Agreement was not effective until CHL received
21 the initial payment.  The Defendant also maintains that the Plaintiff understood that the
22 Trustee's Sale would proceed if the Plaintiff did not electronically transmit the initial

23

24     [1]The issue of whether the CHL representative made a clerical error when inputting the
25 date of April 18,2005 in the Repayment Plan Agreement is irrelevant.  Even if the document
   had contained April 15, 2005 as the date the Plaintiff was required to submit her initial
26 payment, the contract terms would have still been met.  The contract does not specify a
27 particular time that the funds had to be received, and it is undisputed that the Plaintiff
   submitted said funds electronically on April 15, 2005 and that CHL received that
28 transmission at 5:07 p.m.

1   payment that day, April 15, 2007.  There is nothing in the record before this Court to suggest

2   that the Plaintiff was required to submit the initial payment electronically by 5:00 pm on

3   April 15, 2005.  Despite Plaintiff's clear compliance with the contract terms, the Trustee's

4   Sale went forward on April 18, 2005 at 9:00 a.m., and the property was sold for $189,000.

5   As a result of the Defendant's breach, the Plaintiff and her family were subsequently forced

6   to vacate their home.

7               **B.    Wrongful Foreclosure**

8       The Plaintiff has also moved for summary judgment on Count 7 of her Complaint,

9   Wrongful Foreclosure.  Although this Court is aware that the state of Arizona has yet to

10  recognize the tort of Wrongful Foreclosure, it is also clear that Arizona courts have not

11  refused to recognize it either.  Furthermore, other jurisdictions have recognized this tort, and

12  based on the undisputed facts of this matter, the Court finds it appropriate to join those

13  jurisdictions and hold the Defendant liable for wrongfully foreclosing on the Plaintiff's

14  home.  See, e.g., Heritage Creek Development Corp. v. Colonial Bank, 601 S.E.2d 842 (Ga.

15  App. Ct. 2004).

16      Wrongful Foreclosure is a tort that "exists as a statutory duty .... to exercise fairly and

17  in good faith the power of sale in a deed to secure [a] debt."  Boaz v. Latson, 580 S.E. 2d

18  572, 577 (Ga. Ct. of App. 2003).  A breach of this duty is a tort compensable at law.  Id.

19  Arizona Revised Statute § 33-807(A) confers a duty upon the trustee of a trust deed to only

20  sell the property at issue "after a breach or default."  The statutory provision states:

21              By virtue of his position, a power of sale is conferred upon the
                trustee of a trust deed under which the trust property may be
22              sold, in the manner provided in this chapter, **after a breach or**
                **default in performance of the contract or contracts**, for
23              which the trust property is conveyed as security, or a breach or
                default of the trust deed. At the option of the beneficiary, a trust
24              deed may be foreclosed in the manner provided by law for the
                foreclosure of mortgages on real property in which event chapter
25              6 of this title governs the proceedings. The beneficiary or trustee
                shall constitute the proper and complete party plaintiff in any
26              action to foreclose a deed of trust. The power of sale may be
                exercised by the trustee without express provision therefor in the
27              trust deed.

28  Id.  (emphasis added).

The Defendant argues that even if CHL had not fully complied with the statutory notice requirements necessary to complete a valid Trustee's Sale, the Plaintiff cannot seek damages for a tort of wrongful foreclosure.   The Defendant maintains that the Plaintiff waived her only defenses and objections to the Trustee's Sale by failing to seek injunctive relief pursuant to Rule 65, Arizona Rules of Civil Procedure, by 5:00 p.m. mountain standard time on April 15, 2005. Pursuant to A.R.S. § 33-811(C):

> [A]ll persons to whom the trustee mails a notice of a sale under a trust deed pursuant to section 33-809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. mountain standard time on the last business day before the scheduled date of the sale.

According to the Defendant, since the Plaintiff did not seek, nor obtain, a Court Order granting injunctive relief pursuant to Rule 65, Arizona Rules of Civil Procedure, by 5:00 p.m. mountain standard time on April 15, 2005, the last business day before the scheduled date of the sale, the Plaintiff has waived all defenses and objections to said sale.

The Court finds the Defendant's position without merit.  The Plaintiff does not represent that the Court should grant judgment in her favor on the wrongful foreclosure claim because the Defendant failed to give her notice of the sale.  Instead, the Plaintiff's well founded arguments focus on the fact that her default was cured when she executed the Repayment Plan Agreement and fully complied with its terms.  The Court agrees. Furthermore, on April 15, 2005, the Plaintiff executed a Repayment Plan Agreement and submitted funds to cure her default and postpone the sale.  Clearly, the Plaintiff was operating under the belief that the Defendant was also upholding its duty under the agreement.   Had the Defendant acted in compliance with the law, certainly injunctive relief would have been wholly unnecessary.  The facts presented by the Defendant to show that the statutory notice provisions were followed are irrelevant.

The undisputed facts before the Court show that the Plaintiff cured any defaults when she entered into the Repayment Plan Agreement with the Defendant.  The Defendant breached the contract formed between the parties when it allowed the Trustee's sale to go

1   forward on April 18, 2005 in clear violation of the contract terms.  According to A.R.S. § 33-

2   807(A), a trustee is only permitted to exercise the power of sale after a breach or default.

3   The Plaintiff's full and timely performance and complaisance with the aforementioned

4   Repayment Plan Agreement cured any defaults; therefore, the Defendant clearly violated the

5   statutory requirements when it allowed the trustee's sale to go forward.

6   **III.     CONCLUSION**

7         As stated above, the undisputed facts in this matter establish as a matter of law that

8   Defendant breached the Repayment Plan Agreement executed by the parties on April 15,

9   2005, by selling the Plaintiff's home on April 18, 2005.  As such, the Plaintiff is entitled to

10  partial summary judgment in her favor as to her claim for breach of contract and wrongful

11  foreclosure.  Therefore,

12        IT IS ORDERED that the Plaintiff's Motion for Partial Summary Judgment Re:

13  Breach of Contract (Doc. 11) is GRANTED.  Judgment in favor of the Plaintiff is to be

14  entered as to Count Two - Breach of Contract and Count 7 - Wrongful Foreclosure.

15        IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment

16  (Doc. 34) is DENIED.

17        IT IS FURTHER ORDERED that a Scheduling Conference is set in this case for

18  Monday, August 13, 2007 at 1:30 p.m. in Courtroom 601 before the Honorable Paul G.

19  Rosenblatt.  The parties' Joint Case Management is due to the Court on or before Friday, July

20  27, 2007.  An order detailing the requirements for the Joint Case Management Report will

21  follow.

22        DATED this 13th day of July, 2007.

23

24

25                        Paul G. Rosenblatt
                          United States District Judge

26

27

28